UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MATTHEW RYAN DANIELS, | Case No. 2:18-cv-00285-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CASEY CLEAVER, et al., | |
| Defendants. | |

MCSHANE, District Judge:

Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed suit pursuant to 42 U.S.C. § 1983 and alleged numerous violations of his constitutional rights arising from the handling of his mail and confiscation of his personal property. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion is granted, and this case is dismissed.

DISCUSSION

Plaintiff filed suit on February 14, 2018 and alleged twenty-four claims for relief. *See generally* Compl. (ECF No. 2); *see also* Certificate of Service (ECF No. 2 at 111) (indicating

1   - OPINION AND ORDER

that plaintiff placed his Complaint in the correctional mail service on 2/14/18). After screening plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, I dismissed the majority of plaintiff's claims. *See* Order (ECF No. 9). Plaintiff's remaining eight claims are those asserted against correctional officers at Snake River Correctional Institution (SRCI): Claims I, II(A), III, IV, VIII, XII, XIII, and XXI.

Defendants move for summary judgment and argue that several claims are time-barred, the undisputed facts fail to establish a deprivation of plaintiff's rights, and defendants are entitled to qualified immunity from damages. To prevail on their motion, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

1. Claim I

In Claim I, plaintiff alleges that SRCI employee Steven Spang violated his First Amendment rights by "rejecting" three books sent to plaintiff. Compl. at 4-5. Defendants maintain this claim is time-barred and fails to establish a violation of plaintiff's rights.

On February 6, 2015, the SRCI mailroom received nine books addressed to plaintiff. Spang Decl. ¶ 13. Two of the books were on ODOC's list of prohibited publications. As a result, they were returned to the sender. *Id.* Spang mistakenly addressed the remaining seven publications to the wrong inmate, but ultimately those books were returned to the SRCI mailroom for delivery to plaintiff. *Id.* ¶ 14. In the meantime, one of the seven books was placed on the list of prohibited publications. *Id.* On February 18, 2015, Spang returned that book to the

sender and addressed the remaining six books to plaintiff. *Id.* ¶¶ 15-16 & Att. 3 at 96, Att. 4 (publication violation notice).

Defendants argue that this claim is barred by the statute of limitations. I agree. A two-year statute of limitations applies to actions brought under § 1983, and the limitations period began to run when plaintiff knew or should have known of his alleged injury. *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (a federal civil rights claim "accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action"); *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002) (a two-year statute of limitations applies to § 1983 cases brought in Oregon).

In this case, Spang returned the prohibited books in February 2015, and plaintiff did not file this lawsuit until February 14, 2018, three years later. Although plaintiff apparently filed grievances regarding the return of his books – thus tolling the statute of limitations during the grievance process – he does not argue or present evidence showing that the process took more than one year to complete. *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2004) (holding that the statute of limitations "must be" tolled while an inmate completes the relevant prison grievance process).

Plaintiff requests that the court apply equitable tolling and find this claim timely due to the conditions of his confinement, including limited time in the prison law library and his occasional placement in disciplinary segregation. However, plaintiff fails to show that these conditions constituted extraordinary circumstances beyond his control and made it impossible for him to file this claim within the two-year limitations period. *See Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir. 1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a

claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time.").

In any event, Spang is entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (per curiam) (citation and quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted). Further, the Supreme Court has repeatedly admonished lower courts that "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Plaintiff fails to show that his asserted First Amendment right was clearly established in these circumstances.

Under Or. Admin. R. 291-131-0025(10)(c), "If mailroom staff determine a publication contains material that is prohibited under [ODOC] rules, the violation notice and prohibited material shall be reviewed by a designated Central Administration official, who will affirm, reverse, or otherwise modify the original rejection decision in writing." *See also* Spang Decl. ¶ 9. Once a publication is found to include prohibited material, it is placed on a master list of prohibited publications and, if sent to an inmate, immediately returned to the sender. *Id.*; Or. Admin. R. 291-131-0037(2)(b)(A) ("Contraband (including unauthorized attachments or enclosures) that is not illegal or evidence of a crime shall be returned to the non inmate sender").

4    - OPINION AND ORDER

In other words, Spang did not make the final decision to place plaintiff's books on the prohibited list. In these circumstances, no reasonable correctional official in Spang's position would have known that returning three prohibited books to the sender in accordance with ODOC regulations would violate an inmate's First Amendment rights.

Accordingly, Spang is entitled to qualified immunity and summary judgment is granted on Claim I.

### 2. Claim II(A)

In Claim II(A), plaintiff challenges numerous ODOC mail regulations as unconstitutionally overbroad or vague. Compl. at 6-8. Plaintiff also argues that several of the regulations do not provide adequate process or notice when inmate mail is reviewed or withheld.

A law or regulation may be invalidated as overbroad if "'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Comite De Jornaleros De Redondo Beach v. City of Rodondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (citation omitted). "A statute is unconstitutionally vague on its face if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (citation omitted). In the prison context, "a deferential standard of review" applies to regulatory challenges, and courts must uphold a prison regulation "'if it is reasonably related to legitimate penological interests.'" *Mauro v. Arpaio*, 188 F.3d 1054, 1058 (9th Cir. 1999) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))

Plaintiff challenges ODOC regulations defining "contraband," "individual photograph," and "photo company" as overbroad and vague. *See* Or. Admin. R. 291-131-0010(4) (defining "contraband"); *id.* 291-131-0010(10) (defining "individual photograph"); *id.* 291-131-0010(21)

(defining "photo company"). These regulations merely provide key definitions applicable to other ODOC regulations prohibiting and limiting the possession of unauthorized mail. *Id.* 291-131-0025; *id.* 291-131-0035. Plaintiff fails to show that the application of these definitions would be unconstitutionally broad in a majority of situations or that they fail to give fair notice of what is prohibited. Instead, plaintiff argues that SCRI staff often misconstrue and misapply the above definitions to confiscate inmate property, which is an "as-applied" challenge to the rules rather than a proper facial challenge.

Plaintiff also challenges ODOC rules banning "prohibited" mail, including mail to and from inmates' crime victims and maps of areas near correctional facilities. *See* Or. Admin. R. 291-131-0015(2) (prohibiting inmates from sending, receiving, transferring, or possessing mail that violates of ODOC rules); *id.* 291-131-0015(3) (prohibiting inmates from sending, receiving, transferring, or possessing mail to or from victims of their crimes without authorization); *id.* 291-131-0035(2)(k) (prohibiting mail that contains detailed maps of areas within 50 miles of correctional facilities). Plaintiff fails to show that these rules cannot be applied in a constitutional manner, given their purposes in prohibiting unauthorized mail, protecting crime victims, and preventing escapes. *See Perez v. Peters*, 2015 WL 3439846, at *1, 3 (D. Or. May 27, 2015) (dismissing plaintiff's facial challenge to Or. Admin. R. 291-131-0015(2)). For the same reason, the above regulations are rationally related to a valid penological interest. *Turner v. Safley*, 482 U.S. at 78, 89-90 (1987) (explaining factors relevant to determining the constitutionality of prison regulations).

Next, plaintiff challenges the rules prohibiting sexually explicit publications and "freestanding nude images." *See* Or. Admin. R. 291-131-0025(12)(d) (designating freestanding nude images as unauthorized mail); *id.* 291-131-0035(1) (prohibiting sexually explicit material,

including freestanding nude images). The Ninth Circuit and this Court have found that ODOC's restrictions on sexually explicit materials and freestanding nude images are rationally related to legitimate penological interests and do not unconstitutionally infringe on inmates' First Amendment rights. *Bahrampour v. Lampert*, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying *Turner* factors and upholding the ODOC prohibition against sexually explicit materials); *Perez v. Peters*, 2017 WL 507624, at *15 (D. Or. Feb. 7, 2017) (holding that the prohibition against freestanding nude images "is not facially unconstitutional"); *Perez*, 2015 WL 3439846, at *2 (noting that the "Ninth Circuit has already considered and rejected the argument that [Or. Admin. R. 291-131-0035(1)] is facially unconstitutional."). Plaintiff's arguments provide no basis to revisit these rulings.

Plaintiff also argues that several ODOC regulation fail to provide adequate procedural protections when mail is reviewed, withheld, or confiscated. Specifically, plaintiff takes issue with the rule that gives "no time frames" for administrative mail reviews. *See* Or. Admin. R. 291-131-0015(5) (providing that, generally, "incoming and outgoing correspondence should be processed within two days of receipt; publications and packages within four days of receipt, unless the mail is being reviewed for possible violations. There are no time frames for conducting reviews."). Plaintiff argues that, without a prescribed time frame for review, a prison official could withhold mail subject to review for an indefinite period of time. However, plaintiff's argument anticipates an applied challenge, rather than a facial one. Plaintiff does not allege that his mail was subject to review for unreasonable periods of time, and he fails to show that the rule is unconstitutional in all circumstances. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (a plaintiff asserting a facial due process challenge must show that "the law is unconstitutional in all of its applications").

7   - OPINION AND ORDER

Plaintiff likewise challenges rules that require no notice to inmates in certain circumstances when mail is withheld or returned. *See id.* 291-131-0025(1)(b),(c) (providing that mail will be returned to sender "[i]f the inmate recipient cannot be positively identified" and mail will be refused if it has "no return address," with no notice given to the inmate); *id.* 291-131-0025(8) (providing that "[n]o notice or administrative review will be provided to the sender or intended inmate recipient" for mail that contains multiple copies of the same publication, previously rejected publications, bulk mail items, or prohibited calendars). Plaintiff maintains that the lack of notice provided by these rules is unconstitutional and violates inmates' rights to due process.

While plaintiff is correct that the decision to refuse or withhold mail implicates due process concerns, the required procedural protections depend on the interest at issue – the nature of the mail withheld – and the correctional justification for withholding the mail without notice. *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976); *see also Procunier v. Martinez*, 416 U.S. 396, 408 n. 11 (1974) (recognizing that "[d]ifferent considerations may come into play in the case of mass mailings" as opposed to personal correspondence)[1]; *Smith v. Dep't of Corr.*, 219 Or. App. 192, 195 (2008) (stating that "the level of process due senders or recipients of inmate mail depends on the type of mail and the interest at stake" and rejecting facial challenge to ODOC rules requiring no notice before certain mail is rejected, confiscated, or censored).

---

[1] The Supreme Court in *Procunier* made this observation when determining the appropriate standard of review applicable to prison mail regulations. *Procunier* was subsequently overruled in part by *Thornburgh v. Abbott*, 490 U.S. 401 (1989). *Thornburgh* confirmed that correspondence entering a prison must be analyzed under the *Turner* reasonableness standard. 490 U.S. at 412-13.

8    - OPINION AND ORDER

The rules challenged by plaintiff address bulk or non-individualized mail along with certain publications and calendars, and they provide numerous grounds for withholding such mail without notice. *See, e.g.,* Or. Admin. R. 291-131-0025(5)-(7). Thus, the particular nature of an inmate's interest and the asserted correctional justification for the lack of notice will vary depending on the circumstances. Plaintiff's argument again anticipates an applied challenge rather than a facial one. Plaintiff's pending claims do not allege that defendants withheld mail without adequate notice, and he fails to show that the rule cannot be applied in a constitutional manner.

Finally, plaintiff challenges rules that limit ODOC's liability for the loss or damage of individual photographs and allow discretionary bans of vendors who repeatedly send prohibited materials to inmates. Or. Admin. R. 291-131-0025(14) ("The department is not responsible for the loss or damage of individual photographs."); *id.* 291-131-0037(8)(b) (providing that vendors who "repeatedly send prohibited content to inmates after multiple violation notices…may be restricted"). Plaintiff fails to explain how these rules are unconstitutional in all applications.

Accordingly, summary judgment is granted on Claim II(A).

### 3. Claims III and IV

In Claim III, plaintiff alleges that defendant Rhonda Gore retaliated against him on May 7, 2015, when she met with him to discuss administrative mail reviews and "threatened" him with a disciplinary report. Compl. at 11. In Claim IV, plaintiff alleges that SRCI's mailroom staff returned his mail to sender in September of 2015, in retaliation for his previous complaints. Compl. at 13-14. Defendants argue that these claims are untimely. I agree.

With respect to Claim III, the two-year statute of limitations began to run on May 7, 2015, when plaintiff knew of Gore's alleged threat. On June 1, 2015, twenty-three days later,

plaintiff filed a grievance regarding Gore's conduct. Taylor Decl. ¶ 5 & Att. 1 at 3. The statute of limitations was tolled from June 1, 2015 to February 12, 2016, when Administrator Steve Franke responded to plaintiff's second-level appeal and the grievance process terminated. *Id.* ¶ 6 & Att. 1 at 1; *Brown*, 422 F.3d at 942-43. The two-year limitations period began to run again on February 13, 2016, and it expired on approximately January 21, 2018, several weeks before plaintiff filed suit. Thus, Claim III is untimely and barred by the statute of limitations.

With respect to Claim IV, the statute of limitations began to run by November 5, 2015, at the latest, when plaintiff submitted a prison grievance arising out of his returned mail. SRCI's grievance coordinator denied plaintiff's grievance on the same day. Taylor Decl. ¶¶ 8-9 & Att. 2 at 1-2. The statute of limitations expired two years later, in November 2017, and Claim IV is untimely.

For the reasons explained above, plaintiff fails to show that equitable tolling is appropriate, and summary judgment is granted on Claims III and IV.

    4. <u>Claim VIII</u>

In Claim VIII, plaintiff alleges that his mail was returned to sender in or around November of 2015 in violation of his First Amendment rights. Compl. at 24-25.[2]

On November 25, 2015, SRCI employee Stephen Cook returned mail addressed to plaintiff because the mail contained an incorrect SID (identification) number. Cook Decl. ¶ 12. ODOC mail rules require all incoming mail to include an inmate's SID number for efficient and accurate processing of mail. Cook Decl. ¶ 13; Or. Admin. R. 291-131-0025(1) (requiring all incoming mail to "be addressed to the inmate using his/her court name and SID number"). SID

---

[2] Defendants do not assert a statute of limitations defense against this claim.

10 - OPINION AND ORDER

numbers are unique to each inmate and ensure that the mail will be received by the correct inmate rather than an inmate with a similar name. Cook Decl. ¶ 15.

Plaintiff does not dispute that the returned mail contained an incorrect SID number, and he does not challenge the constitutionality of the rule. Rather, plaintiff argues that Cook should have made a greater attempt to determine whether plaintiff was the correct recipient of the mail. *See* Or. Admin. R. 291-131-0025(1)(b) ("If the inmate recipient cannot be positively identified, the mail will be returned to sender. A reasonable attempt will be made to identify the inmate recipient.").

These undisputed facts suggest, at most, that Cook did not comply with the spirit of an ODOC regulation. They do not establish a violation of plaintiff's constitutional rights. *Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009) (explaining that violations of "state departmental regulations do not establish a federal *constitutional* violation").

     5.   Claim XII

In Claim XII, plaintiff alleges that his mail was stolen or confiscated and that SRCI officials failed to take adequate remedial measures in response to his complaints. Compl. at 31.

In March 2016, plaintiff filed a grievance and complained that he had not received more than thirty pieces of mail sent to him since December 2015, and the senders had confirmed the mail had not been returned to them. Taylor Decl. Att. 3 at 2. Plaintiff alleges that when he inquired about missing mail, SRCI mailroom workers suggested the postal service could be responsible. *Id.*

Although plaintiff names Cook, Spang, Shupe, and Hawker as defendants for this claim, plaintiff presents no facts implicating their personal involvement in the alleged theft or

confiscation of his mail. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that liability under § 1983 arises upon a showing of personal participation by each defendant).

Further, plaintiff has not identified any relevant Doe defendants for this claim. Plaintiff maintains that he cannot do so, because defendants "refuse" to identify SRCI officials who worked in the mail room. Pl.'s Response at 16 (ECF No. 110). Granted, plaintiff requested that defendants create and produce a "list" of mailroom workers for the period between January 2015 and February 2017, and his request was denied as improper. *See* Pl.'s Motion to Compel & Order Denying Motion (ECF Nos. 85, 96). However, plaintiff fails to show that he made an appropriate discovery request regarding the identity of SRCI mailroom workers during the relevant time period for this claim. I am not inclined to allow further opportunity for discovery when plaintiff fails to present any evidence to support his conclusory allegation that his mail was improperly confiscated. Plaintiff does not identify the mail that was lost or confiscated and provides no evidence that such mail was authorized by ODOC rules.

Accordingly, summary judgment is granted on Claim XII.

### 6. Claim XIII and XXI

In Claim XIII, plaintiff alleges that on March 31, 2016, Officer McNitt "seized" plaintiff's property at the direction of Lt. Cleaver, and in Claim XXI, plaintiff alleges that "SRCI staff stripped [him] of books previously approved." Compl. at 32-33, 44. Plaintiff contends that these actions were taken in retaliation for his administrative complaints and grievances.[3]

To state a viable claim of First Amendment retaliation, plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2)

---

[3] Although plaintiff names additional defendants in this claim, namely Claus and Cook, he alleges no personal participation by them.

12   - OPINION AND ORDER

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The undisputed facts do not support plaintiff's claims.

On March 28, 2016, Lt. Cleaver ordered plaintiff to reduce the property kept in his cell. McNitt Decl. ¶ 5; *see also* Or. Admin. R. 291-117-0070(2) ("Inmate property shall not exceed the capacity of storage space located in the inmate's assigned housing area and designated by the functional unit manager/designee for the storage of inmate personal property.").[4] On March 31, 2016, plaintiff's personal property was brought to the Complex 2 Administration office for inspection and to facilitate the reduction of property in his cell. McNitt Decl. ¶ 5. Officer McNitt searched plaintiff's property and confiscated numerous unauthorized items. *Id.* ¶¶ 7-9 & Att. 3 at 1-3, 7-11.

On April 4, 2016, SRCI staff found additional property in plaintiff's cell that exceeded his storage space, including three books that were placed on the prohibited publications list after plaintiff had received them and a fourth book under administrative review. *Id.* ¶¶ 10-11 & Att. 3 at 6. Plaintiff was required to relinquish these publications. *Id.*

Plaintiff fails to show that Officer McNitt or Lt. Cleaver confiscated or ordered the confiscation of plaintiff's property because of his prior complaints. Plaintiff presents no evidence that he filed grievances against Officer McNitt or Lt. Cleaver before he was ordered to reduce his property or that either defendant knew of plaintiff's prior complaints. Moreover, plaintiff does not dispute: 1) he had exceeded the storage space in his cell; 2) the items confiscated by Officer

---

[4] Plaintiff disputes that Lt. Cleaver ordered him to reduce his personal property. This disputed fact is not material and does not preclude summary judgment.

McNitt were unauthorized; and 3) four books found in his possession were unauthorized. Pl.'s Response at 17-18. Thus, plaintiff cannot show that the actions taken by Officer McNitt and Lt. Cleaver failed to serve a legitimate correctional purpose.

For the same reasons, Officer McNitt and Lt. Cleaver are entitled to qualified immunity. No reasonable correctional officer in their positions would have known that reducing an inmate's excess property and confiscating unauthorized items would violate an inmate's First Amendment rights. Accordingly, summary judgment is granted on Claims XIII and XXI.

## CONCLUSION

Given the undisputed facts of record, no genuine issue of material fact precludes summary judgment on plaintiff's remaining claims. Defendants' Motion for Summary Judgment (ECF No. 98) is GRANTED. Defendants' Motion for Stay (ECF No. 103) is DENIED as moot, and plaintiff's Motion for Replacement Documents (ECF No. 109) is GRANTED, in part. The Clerk's Office shall provide plaintiff a copy of Document No. 96 (ECF No. 96), with this Opinion and Order.

This action is DISMISSED.

IT IS SO ORDERED.

DATED this 27th day of April, 2020.

    _s/Michael J. McShane_____
    Michael McShane
    United States District Judge